IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| MICHAEL GRIBE, derivatively on behalf of Vestis Corporation,<br>Plaintiff,<br>v.<br>KIMBERLY SCOTT, et al.,<br>Defendants. | CIVIL ACTION FILE<br>NO. 1:25-CV-2726-TWT |

**OPINION AND ORDER**

This is a shareholder derivative action. It is before the Court on Consol Plaintiffs Bruce Harms and Thomas Dove's Motion to Vacate the Leadership Order and Motion to Enter a Scheduling Order [Doc. 13], the Consol Plaintiffs' Motion to Strike Plaintiff Michael Gribe's Response Brief to the Motion to Vacate [Doc. 19], the Plaintiff's Motion to Strike the Consol Plaintiffs' Reply Brief for the Motion to Vacate and Motion for Leave to File Surreply [Doc. 27], the Plaintiff's Motion for Leave to File Notice of Subsequent Developments [Doc. 28], the Plaintiff's Motion for Leave to File Notice of Subsequent Developments [Doc. 30], and the Plaintiff's Motion for Leave to File Notice of Supplemental Authorities [Doc. 34]. For the reasons set forth below, the Consol Plaintiffs' Motion to Vacate the Leadership Order and Motion to Enter a Scheduling Order [Doc. 13] is GRANTED, the Consol Plaintiffs' Motion to Strike the Plaintiff's Response Brief to the Motion to Vacate [Doc. 19] is

DENIED, the Plaintiff's Motion to Strike the Consol Plaintiffs' Reply Brief for the Motion to Vacate and Motion for Leave to File Surreply [Doc. 27] is GRANTED in part and DENIED in part, the Plaintiff's Motion for Leave to File Notice of Subsequent Developments [Doc. 28] is GRANTED, the Plaintiff's Motion for Leave to File Notice of Subsequent Developments [Doc. 30] is GRANTED, and the Plaintiff's Motion for Leave to File Notice of Supplemental Authorities [Doc. 34] is GRANTED.

## I. Background

This case arises out of a purported breach of fiduciary duties by the directors and officers of Vestis Corporation ("Vestis") between October 2023 and May 2024. (*See* Compl. ¶ 1 [Doc. 1]). The Plaintiff Michael Gribe is a shareholder of Vestis. The relevant directors and officers employed by Vestis are Defendants Kimberly Scott, Rick Dillon, Phillip Holloman, Richard Burke, Tracy Jokinen, Lynn McKee, Doug Pertz, Mary Anne Whitney, and Ena Williams (collectively, the "Individual Defendants"). (*See id.* ¶¶ 21, 23, 25, 27, 29, 31, 33, 35, 37).

### A. The Complaint's Allegations

Vestis is an independent public company that is the product of a September 2023 separation of Aramark Uniform Services ("AUS") from Aramark, a global provider of food and facilities services. (*Id.* ¶ 2). Before this separation, AUS provided rental uniforms and workplace supplies and

services. (*Id.*). Vestis provides those same services now. (*Id.*). In October 2023, Vestis's common stock began trading on the New York Stock Exchange ("NYSE") under the symbol "VSTS." (*Id.* ¶ 3). It is now a leading provider of uniform retails and workplace supplies across the United States and Canada to more than 300,000 locations across several industries. (*Id.*).

Before Vestis began trading on the NYSE, Vestis executives held an inaugural "Vestis Analyst Day" call." (*Id.* ¶ 4). During this call, Defendant Scott, Vestis's incoming Chief Executive Officer, characterized Vestis as a growth business, stating that there would be between a 5-7% top-line growth in the Compound Annual Growth Rate ("CAGR").[1] (*Id.*). In addition, certain Individual Defendants specified three areas of Vestis that would drive growth, including the ability to raise prices. (*Id.* ¶ 5). Defendant Dillon, the incoming Chief Financial Officer asserted that they have demonstrated their "ability to take price." (*Id.*). Otherwise, the Individual Defendants used the analyst day call to depict Vestis in an extraordinarily bullish fashion, with Defendant Scott

---

[1] The "Compound Annual Growth Rate," also known as CAGR, is "the rate of return that an investment would need to have every year in order to grow from its beginning balance to its ending balance, over a given time interval." Jason Fernando, *Compound Annual Growth Rate (CAGR) Formula and Calculation*, Investopedia (Aug. 10, 2026). The CAGR is not a true return rate but rather describes "the rate at which an investment would have grown if had grown at the same rate every year and the profits were reinvested at the end of each year." *Id.* "For stock market investors, this can be particularly useful in comparing the performance of different stocks." *Id.*

stating that "investments are in place, they've been made, they're in our run rate." (*Id.* ¶ 6).

After the call, the Individual Defendants continued to wax lyrical on Vestis's future prospects. (*See id.* ¶ 7). In February 2024, Vestis filed a current report on Form 8-K with the Securities and Exchange Commission ("SEC"), which stated that Vestis was expected to continue delivering revenue growth between 4% to 4.5% and an EBITDA[2] margin of approximately 14.3%. (*Id.* ¶ 8). Vestis held an earnings conference call later that same day, where Defendant Scott stated that she expected growth rates to follow similar patterns from prior years and that she sees an opportunity for additional pricing actions later in the year. (*Id.*).

The reality was much different. Vestis suffered from outdated facilities and an underperforming sales force because Aramark had severely underinvested in AUS before creating Vestis. (*Id.* ¶ 9). Accordingly, Vestis experienced "service gaps" before and after the separation that prevented the company from executing the growth plan presented by the Individual

[2] The full form of the acronym EBITDA is Earnings Before Interest, Taxes, Depreciation, and Amortization. (*Id.*); Adam Hayes, *EBITDA: Definition, Calculation Formulas, History, and Criticisms*, Investopedia (Aug. 10, 2026). "EBITDA can be used to track and compare the underlying profitability of companies regardless of their depreciation assumptions or financing choices." Adam Hayes, *EBITDA: Definition, Calculation Formulas, History, and Criticisms*, Investopedia (Aug. 10, 2026).

Defendants to the public. (*Id.*). This underlying issue began to affect Vestis's projections. (*See* ¶ 10).

Indeed, in May 2024, Vestis issued a press release that reported the Company's financial performance for the second quarter of the 2024 fiscal year, which contained a revised financial outlook for 2024 that projected Vestis's 2024 revenue growth to be in the range of -1% to 0%. (*Id.*).[3] On an earnings conference call held later that same day, Defendant Scott detailed certain challenges facing Vestis relating to sales productivity and deliberate moderated pricing actions. (*Id.*). Defendant Scott further stated that Vestis made the recent and deliberate decision to moderate pricing actions for the remainder of the fiscal year in order to "realize improved retention while [Vestis] enhance[s] [their] services processes." (*Id.*). This, as Defendant Scott acknowledged, would impact their revenue and EBITDA in the second half of the year but the decision was necessary since she acknowledged that more than 70% of the customer cancellations were due to causes within Vestis's control. (*Id.*). The news immediately impacted the share price of VSTS on the NYSE.

---

[3] Within the Complaint, the Plaintiff actually writes that the truth emerged on May 2, 2022 instead of May 2024. (*See id.*). This makes little sense because the Plaintiff has written his Complaint chronologically and the rest of the paragraph discusses Fiscal Year 2024. (*See id.*). Accordingly, for the purposes of this background section, the Court gives the Plaintiff the benefit of the doubt that the date was a clerical error, especially when this detail poses little relevance to the underlying motions before the Court.

The night before the announcement, VSTS was priced at $18.47 per share. (*Id.* ¶ 11). After the announcement, the price of a share of VSTS dropped by 45% to close at $10.16 per share. (*Id.*).

In response to the drop in share price, the Plaintiff, on behalf of Vestis, filed this derivative action and seeks to certify a class. (*See id.* ¶ 13; *see generally id.*). He alleges that the Individual Defendants made materially false and/or misleading statements and failed to disclose material adverse facts about Vestis's business, operations, and prospects. (*Id.* ¶ 12). Specifically, the Plaintiff states that the Individual Defendants failed to disclose to shareholders and investors that: (1) Aramark had chronically underinvested in AUS before the separation; (2) because of the underinvestment, Vestis suffered from outdated facilities and an underperforming sales force; (3) because of the underinvestment, Vestis experienced "service gaps" before and after the separation from Aramark that prevented Vestis from executing the Individual Defendants' public growth plan; and (4) Vestis failed to maintain internal controls. (*Id.*). Accordingly, the Plaintiff, on behalf of Vestis, asserts state and common law claims against the Individual Defendants for (1) breach of fiduciary duty, (*id.* ¶¶ 199-208), (2) unjust enrichment, (*id.* ¶¶ 209-13), (3) abuse of control, (*id.* ¶¶ 214-17), (4) gross mismanagement, (*id.* ¶¶ 218-22), and (5) waste of corporate assets, (*id.* ¶¶ 223-27). He also asserts federal claims against Defendants Scott and Dillon for contribution under Sections 10(b) and

20(a) of the Securities Exchange Act of 1934 and under SEC Rule 10b-5 promulgated under these statutes. (*Id.* ¶¶ 228-32).

**B. Relevant Procedural History**

A month after the Complaint was filed, the parties filed a Joint Motion to Stay proceedings with this Court because of the existence of a parallel proceeding within the Northern District of Georgia, captioned *Plumbers, Pipefitters and Apprentices Local No. 112 Pension Fund v. Vestis Corp. et al*, 1:24-cv-2175, with Judge Grimberg presiding. (*See* Mot. to Stay, at 1-2 [Doc. 8]). This was because Vestis's motion to dismiss remained under consideration during the pendency of these proceedings before the Court and the motion's resolution could address certain issues without expending additional judicial resources. (*Id.* at 4). The Court granted the motion and allowed the parties to meet and confer regarding consolidation of related derivative actions. (*See generally* Stay Order [Doc. 9]).

Three months later, the parties filed a Joint Motion to Consolidate Cases and Appoint Lead Counsel, seeking to (1) consolidate this action with another associated action before the Court in *Hollin v. Scott et al.*, 1:25-cv-4498, (2) appoint The Brown Law Firm, P.C. and Rigrodsky Law, P.A. as Co-Lead Counsel and Webb, Klase, & Lemond, LLC as Liaison Counsel for the Plaintiffs in the consolidated action, and (3) stay the consolidated action pursuant to the terms of the Court's earlier stay order. (*See* Mot. to Consolidate, at 2-3 [Doc.

10]). Soon after, the Court granted this motion and permitted consolidation, appointed co-lead counsel, and stayed the consolidated action. (*See generally* Leadership Order [Doc. 11]). The Leadership Order also provides that it shall apply to all shareholder derivative actions "arising out of the same, or substantially the same, transactions or events" as the consolidated action which are "subsequently filed in, removed to, reassigned to, or transferred to this Court." (*Id.* at 13-14).[4]

A little more than a month after the Leadership Order was docketed and lead counsel was appointed, two additional actions before the Court, captioned *Dove v. Scott et al.*, 1:25-cv-5733, and *Harms v. Scott et al.*, 1:25-cv-5156, were filed. Within the week, the Consol Plaintiffs moved to vacate the Leadership Order and moved for the Court to enter a scheduling order for leadership briefing. (*See generally* Consol Pls.' Mot. to Vacate [Doc. 13]). The Court now addresses the Consol Plaintiffs' motion and all associated motions.

## II. Legal Standards

### A. Motion to Strike

Under Rule 12(f), the Court may on its own or by motion strike all or a

[4] Consol Plaintiff Lawrence Hollin eventually voluntarily dismissed his individual claims under Federal Rules of Procedure 23.1 and 41(a)(2) and is no longer associated with this action. (*See generally* Notice of Voluntary Dismissal [Doc. 14]).

portion of a "pleading" that contains "an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Motions to strike are generally "disfavored," and courts regularly deny such "drastic" measures "unless the matter sought to be omitted has no possible relationship to the controversy, may confuse the issues, or otherwise prejudice a party." *Allen v. Life Ins. Co. of N.A.*, 267 F.R.D. 407, 410 (N.D. Ga. 2009) (citation omitted); *Williams v. Delray Auto Mall, Inc.*, 289 F.R.D. 697, 699 (S.D. Fla. 2013) (citation omitted).

**B. Motion to Vacate[5]**

On motion and just terms, the Court can relieve a party from its order when applying the order prospectively is no longer equitable, or for any other reason that justifies relief. Fed. R. Civ. P. 60(b)(5), (6). A Rule 60(b) movant "must demonstrate a justification for relief so compelling that the district court

[5] The Consol Plaintiffs do not cite any relevant authority within their briefs that allows a court to vacate a previously issued order. (*See* Br. in Supp. of Consol Pls.' Mot. to Vacate, at 3-11 [Doc. 13]). The only Rule or statute that the Consol Plaintiffs cite to that justifies their motion arises out of Federal Rule of Civil Procedure 23.1 and 23(g), which provides no explicit basis to vacate a prior appointment made by a court. Rule 23.1 discusses derivative actions and does require that one be brought by counsel that fairly and adequately represents the interests of the shareholders but provides no basis for vacatur. Fed. R. Civ. P. 23.1. Rule 23(g) discusses the appointment of class counsel and the factors a court should consider when appointing counsel but does not provide for a court to vacate a previous order. Fed. R. Civ. P. 23(g). Despite the Consol Plaintiffs' shortcoming within their briefing, the Court nonetheless will treat the motion as one under Rule 60, which provides the only basis for a Court to vacate a previous order it made.

[is] *required* to grant [his] motion." *Rice v. Ford Motor Co.*, 88 F.3d 914, 919 (11th Cir. 1996). Moreover, Rule 60(b)(6) provides "an extraordinary remedy which may be invoked only upon a showing of exceptional circumstances." *Id.* A Rule 60(b) motion is committed to the sound discretion of the district judge. *Am. Bankers Ins. Co. of Fla. v. Northwestern Nat'l Ins. Co.*, 198 F.3d 1332, 1338 (11th Cir. 1999).

## III. Discussion

In a hydra-like fashion, when the Consol Plaintiffs filed their Motion to Vacate before the Court, the subsequent briefing has generated six (or maybe eight) motions for the Court to consider. Before the Court attacks the central head, the Court will address the surrounding motions first to determine what information to consider.

### A. Motions for Leave

The Plaintiff has filed three Motions for Leave to supplement the Court with additional information regarding the Motion to Vacate. (*See generally* Pl.'s Mot. for Leave to File Notice of Subsequent Developments [Doc. 28]; Pl.'s 2d. Mot. for Leave to File Notice of Subsequent Developments [Doc. 30]; Pl.'s Mot. for Leave to File Notice of Supplemental Authorities or Information [Doc. 34). All three motions are opposed. (*See generally* Consol Pls.' Br. in Opp'n to Pl.'s Mots. for Leave to File Notice of Subsequent Developments [Doc. 32]; Consol Pls.' Br. in Opp'n to Pl.'s Mot. for Leave to File Notice of Supplemental

Authorities or Information [Doc. 34]). Such motions are more properly stylized as notices rather than formal motions. *Ide v. Neighborhood Restaurant Partners, LLC*, 32 F. Supp. 3d 1285, 1290 (N.D. Ga. 2014). Consistent with this approach, the Court will review the supplemental authority and take into account the objections raised by the Consol Plaintiffs in its consideration. *See id.* Thus, the Court grants these motions for the sake of clarity on the docket.

**B. Motions to Strike**

After the Plaintiff filed his response brief to the Consol Plaintiffs' Motion to Vacate, the Consol Plaintiffs moved to either (1) disregard the response brief and the accompanying declaration entirely or (2) require that the response brief and the declaration be revised and resubmitted for procedural reasons. (Br. in Supp. of Consol Pls.' Mot. to Strike Pl.'s Resp. Br., at 1-2 [Doc. 19]). In the pendency of this Motion to Strike, when the Consol Plaintiffs filed their reply brief for the Motion to Vacate, the Plaintiff moved to strike certain statements within the attached declaration that are purportedly false. (Br. in Supp. of Pl.'s Mot. to Strike Consol Pls.' Reply Br., at 1-2 [Doc. 27]). The Court addresses these motions separately.

**1. Consol Plaintiffs' Motion to Strike**

The Consol Plaintiffs argue that the Court should strike the Plaintiff's response brief to the Motion to Vacate because: (1) the formatting of the brief does not comply with Local Rule 5.1(C) in order to fit substantially more

information within his briefing; (2) the brief omits a Certificate of Compliance required by Local Rule 7.1(D); and (3) the accompanying declaration and exhibits are improperly argumentative under Federal Rule of Civil Procedure 56(c)(4) and Local Rule 7.1(A)(1). (*See* Br. in Supp. of Consol Pls.' Mot. to Strike Pl.'s Resp. Br., at 3-5).

**a. Local Rules 5.1(C) and Local Rule 7.1(D)**

The Local Rules provides that all filings before the Court must be "double-spaced between lines" with specific requirements for font and font size. *See* L.R. 5(C), NDGa. Consistent with these formatting requirements, a party's response brief must not exceed twenty-five pages. *See* L.R. 7.1(D), NDGa. The Consol Plaintiffs first argue that the Plaintiff's response brief should be struck because, in violation of Local Rule 5(C), the brief was not double-spaced and the lettering failed to comply with font and font size requirements. (*See* Br. in Supp. of Consol Pls.' Mot. to Strike Pl.'s Resp. Br., at 3). They note that this error presents the Plaintiff with an advantage because, if the Plaintiff complied with formatting requirements within the Local Rules, his brief would extend to thirty-three pages instead of the required twenty-five pages. (*Id.*); *see* L.R. 7.1(D), NDGa.

The Plaintiff disagrees that his response brief violates the Local Rules. He argues that, instead of using the default double-spacing, he used exact

spacing[6] which is permitted under the Local Rules but only points to one case reaching that conclusion that neither arises out of the Northern District of Georgia nor discusses the Local Rules. (Pl.'s Br. in Opp'n to Consol Pls.' Mot. to Strike, at 3 (citing *Varsity Brands,* 2023 WL 11804062 at *1) [Doc. 20]). In fact, the case from the Western District of Tennessee directly cites to case law from the Northern District of Georgia discussing the Local Rules applicable here as an example of a holding that concludes differently from the court on similar facts. *See Varsity Brands*, 2023 WL 11804062 at *1 (quoting *Doubleday Acquisitions LLC v. Envirotainer AB*, 2022 WL 18777366, at *3 (N.D. Ga. Jul. 1, 2022)). The court in *Doubleday Acquisitions* comes to the correct conclusion under these Local Rules, explaining that the "'double spacing' means a word processing program's default double spacing, not exact spacing." *Doubleday Acquisitions*, 2022 WL 18777366, at *4; *see also E&G Enter., Inc. v. Home Depot USA, Inc.*, 2025 WL 3254907, at *4 n. 6 (N.D. Ga. Sep. 12, 2025) (holding that the Local Rules do not permit "exact spacing" and warning the offending counsel that, if it violates Local Rule 5.1(C) again, the court may decline to consider the noncompliant motion or brief); *Reprieto v. Cherokee Cnty. Sch.*

[6] "Exact spacing" refers to specifically formatting text on a word processor to increase line spacing to an amount that is twice the size of the font. *See Jones v. Varsity Brands, LLC*, 2023 WL 11804062, at *1 (W.D. Tenn. Nov. 14, 2023). For example, where a filing is formatted with 14-point Times New Roman, a litigant could format his brief to increase line spacing to 28 points to be double-spaced through exact spacing.

*Dist.*, 2025 WL 3691409, at *3 n. 4 (N.D. Ga. May 30, 2025) (same); *Hicks v. 1715 Northside Dr., Inc.*, 2025 WL 2857521, at *3-4 (holding the same and disregarding any issues and arguments presented beyond page 25 of the brief, likening the formatting move to an attempt at "sleight of hand").

Thus, the Court holds that the Plaintiff's response brief is noncompliant with Local Rule 5.1(C). And despite Plaintiff counsel's best efforts to air his grievances with Consol Plaintiffs' law firm, the Court will not consider "sleight-of-hand" practices employed by a previous mentor as persuasive authority that necessitates this Court to permit the practice. (*See* Pl.'s Br. in Opp'n to Consol Pls.' Mot. to Strike, at 4 (explaining that Plaintiff's counsel "used exact spacing instead of double spacing to ensure it complied with the 25-page limit, a practice he learned when he was once a mentee of Laurence Rosen, the founder and managing attorney of Rosen."). But this Court will not go further because the Plaintiff has provided a corrected brief with his response brief to the Motion to Strike that complies with Rule 5.1(C) and includes the certification required by Local Rule 7.1(D). Thus, on the issue of formatting, the Court will consider the correct version of the brief instead of the original brief.

**b. Improper Argumentation in Declaration and Exhibits**

The Consol Plaintiffs next move to strike an attached declaration and accompanying exhibits from the Plaintiff's response brief for being improperly argumentative and being a vehicle for legal advocacy. (*See* Br. in Supp. of

Consol Pls.' Mot. to Strike Resp. Br., at 5-6). For this argument, the Consol Plaintiffs once again improperly rely on inapplicable authority. Federal Rule of Civil Procedure 56 concerns only Motions for Summary Judgment, which this is not. *See* Fed. R. Civ. P. While the Court has the discretion to dismiss the argument on this defect alone, the Court will nonetheless turn to the applicable standard of evaluating whether the declaration is improper. As previously mentioned, Rule 12(f) allows a court to strike any pleading or part of a pleading that is redundant, immaterial, impertinent, or scandalous. *See* Fed. R. Civ. P. 12(f).

On this issue, the Court need not even consider whether the declaration and exhibits are redundant, immaterial, impertinent, or scandalous because those documents are not pleadings. Even when considering motions for summary judgment, "[a] declaration . . . . is not a pleading and is therefore an inappropriate target of a motion to strike." *Zottola v. Anesthesia Consultants of Savannah, P.C.*, 169 F. Supp. 3d 1348, 1357 (S.D. Ga. 2013) (citing *Addison v. Ingles Market, Inc.*, 2012 WL 3600844, at *1 (M.D. Ga. Aug. 21, 2012)); *see Durham v. Navient Sols., LLC*, 2019 WL 13207594, at *2 (N.D. Ga. Sep. 19, 2019)) ("Because the Dries declaration is not the proper target of a motion to strike, the plaintiff's motion . . . is DENIED"); *James v. General Mills Ops., LLC*, 810 F. Supp. 1307, 1336 (N.D. Ga. 2025) (denying motion to strike a declaration as an improper vehicle and treating the arguments as objections to

the declarations instead). And although some courts will convert the motion to strike into objections regarding admissible evidence on a motion for summary judgment, this matter does not concern issues that will be raised at trial. Thus, the Court denies the Consol Plaintiffs' Motion to Strike.

**2. Plaintiff's Motion to Strike and Motion to File Surreply**

The Plaintiff moves to strike portions of a declaration attached to the Consol Plaintiffs' reply brief for certain alleged false statements contained within the declaration. As explained earlier, a declaration is not a pleading and therefore cannot be struck. Thus, the Plaintiff's Motion to Strike is not granted.

But the Court grants the Plaintiff's Motion to File a Surreply. A trial court has broad discretion in authorizing the filing of a surreply and "this discretion should be exercised in favor of allowing a surreply only where a valid reason for such additional briefing exists, such as where the movant raises new arguments in its reply brief." *Fedrick v. Mercedes-Benz USA, LLC*, 366 F. Supp. 2d 1990, 1197 (N.D. Ga. 2005). "'To allow such sur-replies as a regular practice would put the court in the position of refereeing an endless volley of briefs.'" *Amargos v. Verified Nutrition, LLC*, 666 F. Supp. 3d 1249, 1250 (S.D. Fla. 2022) (quoting *Garrison v. Ne. Ga. Med. Ctr., Inc.*, 66 F. Supp. 2d 1336, 1340 (N.D. Ga. 1999)). Although the Consol Plaintiffs oppose the motion, the Plaintiffs' attached surreply is limited to three pages and addresses a single issue raised in the Consol Plaintiffs' reply brief. Even if the accompanying

declaration to the Consol Plaintiffs' reply brief did not contain false statements, the Plaintiff is entitled to a short response to the new exhibit without sacrificing judicial economy. Thus, the Court grants the Plaintiffs' Motion to File a Surreply and will consider the attached surreply on the Motion to Vacate.

**C. Motion to Vacate**

After resolving these semi-frivolous motions, the Court turns to the final head of the Hydra. The Consol Plaintiffs request the Court to vacate its Leadership Order because: (1) it would be inequitable to not allow consolidated counsel to present arguments as to their suitability to be lead counsel, (Br. in Supp. of Consol Pls.' Mot. to Vacate, at 3-5); (2) Plaintiff's counsel only became lead counsel through the use of "improper lawyer driven tactics," (*id.* at 5-9); and (3) Plaintiff's counsel is inadequate lead counsel because they are spread too thin with other engagements, (*id.* at 9-11). Before addressing these arguments on the merits, the Plaintiff argues that the Court should not consider the motion because (1) the Consol Plaintiffs lack standing in the case, (Pl.'s Br. in Opp'n to Consol Pls.' Mot. to Vacate, at 5-10 [Doc. 18]), and (2) the motion is untimely, (*id.* at 10-11).

Both arguments are dead-on-arrival. Addressing the standing argument first, the Plaintiff attempts to relitigate the issue of whether consolidation is appropriate. Under Federal Rule of Civil Procedure 42, a court may consolidate

several actions into one if they involve a common question of law or fact. *See* Fed. R. Civ. P. 42(a). In any case, while a consolidated proceeding assumes the form of a joint suit, each individual case is distinct and the resolution of the causes of actions alleged can differ. *Hall v. Hall*, 584 U.S. 59, 67-68 (2018). Thus, the Court will not entertain the attempt to relitigate those orders.

Next, the Court addresses the issue of timeliness. Under Local Rule 7.1(E), a motion for reconsideration "shall be filed with the clerk or court within twenty-eight (28) days after entry of the order or judgment." Here, the Court entered its Leadership Order on September 11, 2025. The Consol Plaintiffs filed their Motion to Vacate on October 21, 2025. The Plaintiff argues that, because the Consol Plaintiffs' motion was filed 12 days after the deadline, the Court should deny the motion for timeliness. (*See* Pl.'s Br. in Opp'n to Consol Pls.' Mot. to Vacate, at 10-11).

While the motion is untimely, the Court declines to exclude the motion from consideration. Under Local Rule 7.2(E), a court has full discretion to determine whether to consider a motion or brief, even if it is untimely under Local Rule 7.2(D). *See* L.R. 7.2(E), NDGa. The Consol Plaintiffs were only incorporated into the action on October 17, 2025, and promptly filed the Motion to Vacate just four days later. Because the Consol Plaintiffs had no opportunity to file the motion in a timely fashion, the Court will consider the Motion to Vacate without penalty.

Finally, the Court agrees to vacate the Leadership Order for the limited purpose of reconsidering the issue of lead counsel as it is inequitable for the Consol Plaintiffs for the Leadership Order to be enforced. *See* Fed. R. Civ. P. 60(b)(5). When the Court filed the Leadership Order, Plaintiff Gribe and former Plaintiff Hollin were the only two plaintiffs that were a part of this action. Accordingly, the Court entered the Leadership Order to allow both firms to be joint lead counsel. Since then, former Plaintiff Hollin and one of the law firms have been removed from the action, leaving Plaintiff Gribe and his law firm alone in the suit. Since the consolidation of Consol Plaintiffs Harms and Dove, the Court deems it equitable for it to vacate its previous Order and hear from the parties as to the issue of lead counsel. This is not to say one party is more equipped to be lead counsel than the other but rather the decision hinges on allowing the Consol Plaintiffs a seat at the table, which they never would have due to the timing of the consolidation. Thus, the Court grants the Motion to Vacate for the limited purpose of reconsidering lead counsel. The Court will schedule a hearing on the matter in the near future.

## IV. Conclusion

For the foregoing reasons, the Consol Plaintiffs' Motion to Vacate the Leadership Order and Motion to Enter a Scheduling Order [Doc. 13] is GRANTED, the Consol Plaintiffs' Motion to Strike the Plaintiff's Response Brief to the Motion to Vacate [Doc. 19] is DENIED, the Plaintiff's Motion to

Strike the Consol Plaintiffs' Reply Brief for the Motion to Vacate and Motion for Leave to File Surreply [Doc. 27] is GRANTED in part and DENIED in part, the Plaintiff's Motion for Leave to File Notice of Subsequent Developments [Doc. 28] is GRANTED, the Plaintiff's Motion for Leave to File Notice of Subsequent Developments [Doc. 30] is GRANTED, and the Plaintiff's Motion for Leave to File Notice of Supplemental Authorities [Doc. 34] is GRANTED. The Clerk is directed not to reopen the previous Joint Motion to Consolidate Cases and Appoint Lead Counsel [Doc. 10].

A hearing on the forthcoming leadership motions is hereby set for October 9, 2026 at 10:00 A.M. in Courtroom 2108, United States Courthouse, 75 Ted Turner Drive, S.W., Atlanta, Georgia. No live witnesses will be permitted. Counsel for the Plaintiff and Consol Plaintiffs are directed to file leadership motions within fourteen (14) days of the filing of this Opinion and Order. After these motions have been filed, the parties have fourteen (14) days to file response briefs to the leadership motions. Reply briefs are due fourteen (14) days after the response briefs have been filed.

SO ORDERED, this 18th day of August, 2026.

Thomas W. Thrash

THOMAS W. THRASH, JR.
United States District Judge